UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN KELLER,<br><br>        Plaintiff,<br><br>   vs.<br><br>NKSP WARDEN, et al.,<br><br>        Defendants. | 1:16-cv-00613-EPG-PC<br><br>ORDER FINDING CERTAIN COGNIZABLE CLAIMS AND DISMISSING OTHER CLAIMS<br><br>ORDER FOR PLAINTIFF TO EITHER:<br><br>  (1)  FILE AN AMENDED COMPLAINT,<br><br>OR<br><br>  (2)  NOTIFY COURT OF HIS WILLINGNESS TO PROCEED ONLY AGAINST DEFENDANT IGI FOR ADVERSE CONDITIONS OF CONFINEMENT AND VIOLATION OF DUE PROCESS<br><br>THIRTY-DAY DEADLINE |

**I.    BACKGROUND**

      John Keller ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On May 2, 2016, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)  Plaintiff's Complaint tells of how he was falsely validated as a gang member and detained in solitary confinement for more than five years, causing a decline in his mental health, after which he was cleared of gang activity and

1

released.  For the reasons described in this order, the Court finds that Plaintiff states cognizable claims for adverse conditions of confinement and violation of due process against the IGI.  The Court finds that Plaintiff fails to state any other claims based on this Complaint.  Plaintiff must now tell the Court to go forward on the claims against the IGI, or file an amended complaint.

On May 11, 2016, Plaintiff consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c), and no other parties have made an appearance.  (ECF No. 7.)  Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required.  Local Rule Appendix A(k)(3).

Plaintiff's Complaint is now before the Court for screening.

## II.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S.

Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. While factual allegations are accepted as true, legal conclusions are not. Id.

### III.     SUMMARY OF COMPLAINT

The events at issue in the Complaint allegedly occurred at North Kern State Prison (NKSP) in Delano, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants the Warden of NKSP and the IGI (Institutional Gang Investigator) ("Defendants"). Defendants were employed by the CDCR at NKSP at the time of the events at issue. Plaintiff's factual allegations follow.

Plaintiff is an African-American man who is "mentally challenged." (Complaint, ECF No. 1 at 11:26-27). On September 3, 2008, the IGI at NKSP illegally placed Plaintiff in Administrative Segregation, leading to years of solitary confinement on a false gang validation. Plaintiff is not affiliated with a gang and has no gang tattoos. He was held in isolation from September 3, 2008 until May 7, 2015. Due to his isolation, Plaintiff's mental health declined. He is now a mental health patient and takes psychotropic medication. Plaintiff alleges that he suffers from severe and lasting mental health issues as a result of his detention. He describes his mental state as "psychotic" and alleges that "I went crazy in isolation." (Complaint at 3 ¶4.) On May 7, 2015, the DRB (Departmental Review Board) cleared Plaintiff of gang activity and released him from the SHU (Security Housing Unit).

Plaintiff alleges that the CDCR used an "underground rule" to validate him as a gang associate in 2008, "for possessing pictures of grass roots Freedom Fighters like Malcolm X, Martin L. King or George L. Jackson, and having a Prison Focus, Bay View Newspaper, and writing grass roots political articles or Prison Law News editor." (Complaint at 4 ¶3.) Plaintiff alleges that the CDCR "continues to retaliate against me, knowing I am mentally retarded." Id.

Plaintiff seeks monetary damages as relief.

///

///

3

IV.     **PLAINTIFF'S CLAIMS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A. **<u>Adverse Conditions of Confinement – Eighth Amendment</u>**

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); see also <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981); <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006); <u>Osolinski v. Kane</u>, 92 F.3d 934, 937 (9th Cir. 1996); <u>Jordan v. Gardner</u>, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by <u>Sandin v. Connor</u>, 515 U.S. 472 (1995); see also <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000); <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1246 (9th Cir. 1982); <u>Wright v. Rushen</u>, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the Court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. See <u>Toussaint</u>, 801 F.2d at 1107; <u>Hoptowit</u>, 682 F.2d at 1246-47; <u>Wright</u>, 642 F.2d at 1133. "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991); <u>see also</u> <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1151 (9th Cir. 2010); <u>Osolinski</u>, 92 F.3d at 938-39; <u>Toussaint</u>, 801 F.2d at 1107; <u>Wright</u>, 642 F.2d at 1133. When considering the conditions of confinement, the Court should also consider the amount of time to which the prisoner was subjected to the condition. See <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978); <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1042 (9th Cir. 2005); <u>Hoptowit</u>, 682 F.2d at 1258. As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to unconstitutional conditions of confinement to

establish an Eighth Amendment violation.  See Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.  This Court has found that "placement of seriously mentally ill inmates in the harsh, restrictive and non-therapeutic conditions of California's administrative segregation units for non-disciplinary reasons for more than a minimal period necessary to effect transfer to protective housing or a housing assignment violates the Eighth Amendment."  Coleman v. Brown, 28 F. Supp. 3d 1068, 1099 (E.D.Cal. 2014).

Based on Plaintiff's allegations that the IGI held him in isolation for non-disciplinary reasons from September 3, 2008 until May 7, 2015, the Court finds that Plaintiff states a claim for violation of the Eighth Amendment against the IGI.

### B.      Warden - Supervisory Liability

Plaintiff has named the Warden of NKSP, who holds a supervisory position, as a defendant, without alleging that the Warden personally acted against him.  Plaintiff is advised that "[l]iability under [§] 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no *respondeat superior* liability under [§] 1983."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).  Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).  Therefore, Plaintiff fails to state a claim against the Warden of NKSP.

### C.      Due Process

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake.  See Ingraham v. Wright, 430 U.S. 651, 672-73 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972); Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003); Neal v. Shimoda, 131 F.3d 818, 827 (9th Cir. 1997); Erickson v. United States, 67 F.3d 858, 861 (9th Cir. 1995);

Schroeder v. McDonald, 55 F.3d 454, 462 (9th Cir. 1995); Tellis v. Godinez, 5 F.3d 1314, 1316 (9th Cir. 1993).

Liberty interests can arise both from the Constitution and from state law. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Hewitt v. Helms, 459 U.S. 460, 466 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in avoiding "more adverse conditions of confinement." Id. The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt, 459 U.S. at 466-68; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin, 515 U.S. at 481-84. Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007); Jackson, 353 F.3d at 755; Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). When conducting the Sandin inquiry, Courts should look to Eighth Amendment standards as well as the prisoners' conditions of confinement, the duration of the sanction, and whether the sanctions will affect the length of the prisoners' sentence. See Serrano, 345 F.3d at 1078; Ramirez, 334 F.3d at 861; Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996). The placement of an inmate in the SHU indeterminately may amount to a deprivation of a liberty interest of "real substance" within the meaning of Sandin. See Wilkinson, 545 U.S. at 224. The "atypicality"

prong of the analysis requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. See Carlo v. City of Chino, 105 F.3d 493, 499 (9th Cir. 1997). A plaintiff must assert a "dramatic departure" from the standard conditions of confinement before due process concerns are implicated. Sandin, 515 U.S. at 485–86; see also Keenan, 83 F.3d at 1088–89.

Plaintiff alleges that he is "mentally challenged" and was held in solitary confinement for more than five years on false charges that he was a gang associate. While Plaintiff has not described in detail the conditions of his confinement in segregation, it is sufficient that he alleges he was detained in isolation for more than five years on false charges. The fact that he was later cleared of gang activity and released from segregation does not diminish the conditions under which he was held. It is true that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone." Chappell v. Mandeville 706 F.3d 1052, 1061 (9th Cir. 2013) (citing Wilson, 501 U.S. at 304). Plaintiff alleges that he suffers from severe and lasting mental health issues as a result of his detention. Plaintiff describes his mental state as "psychotic" and alleges that "I went crazy in isolation." (Complaint at 3 ¶4.) Based on these allegations, the Court finds that Plaintiff's detention was a "dramatic departure" from the standard conditions of confinement, and therefore Plaintiff had a liberty interest in avoiding his detention.

The assignment of validated gang members to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative segregation." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). As such, Plaintiff is entitled to the minimal procedural protections set forth in Toussaint, such as notice, an opportunity to be heard, and periodic review. Bruce, 351 F.3d at 1287 (citing Toussaint, 801 F.2d at 1100). Due process also requires that there be an evidentiary basis for the prison officials' decision to place an inmate in segregation for administrative reasons. Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint, 801 F.2d at 1104-05. This standard is met if there is "some evidence" from which the conclusion of the administrative tribunal could be deduced. Id. at 1105. The standard is only "minimally

stringent" and the relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the prison decision-makers. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987). The "some evidence" standard applies to an inmate's placement in the SHU for gang affiliation. See Bruce, 351 F.3d at 1287-88.

When a prisoner is placed in administrative segregation, prison officials must, within a reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the evidence justifying the decision to segregate the prisoner. See Hewitt, 459 U.S. at 476, abrogated in part on other grounds by Sandin, 515 U.S. 472 (1995); Mendoza v. Blodgett, 960 F.2d 1425, 1430 (9th Cir. 1992), abrogated in part on other grounds by Sandin, 515 U.S. 472; Toussaint, 801 F.2d at 1100, abrogated in part on other grounds by Sandin, 515 U.S. 472. The Supreme Court has stated that five days is a reasonable time for the post-placement review. See Hewitt, 459 U.S. at 477. Before the review, the prisoner must receive some notice of the charges and be given an opportunity to respond to the charges. See id. at 476; Mendoza, 960 F.2d at 1430-31; Toussaint, 801 F.2d at 1100. The prisoner, however, is not entitled to "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." Toussaint, 801 F.2d at 1100-01 (citations omitted). After the prisoner has been placed in administrative segregation, prison officials must periodically review the initial placement. See Hewitt, 459 U.S. at 477 n.9; Toussaint, 801 F.2d at 1101. Annual review of the placement is insufficient. See Toussaint, 801 F.2d at 1101.

Plaintiff alleges that he is not a gang member, and the CDCR used an "underground rule" to validate him as a gang associate, merely "for possessing pictures of grass roots Freedom Fighters like Malcolm X, Martin L. King or George L. Jackson, and having a Prison Focus, Bay View Newspaper, and writing grass roots political articles or Prison Law New editor." (Complaint at 4 ¶3.) These allegations are sufficient to state a cognizable claim against the IGI for violation of Plaintiff's rights to due process.

///

///

### D. Equal Protection – Fourteenth Amendment

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano, 345 F.3d at 1082, Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff alleges that his right to equal protection was violated. However, Plaintiff has not alleged any facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

### E. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. Rizzo v. Dawson, 778 F.2d 5527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-68; accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff merely states that the CDCR "continues to retaliate against me, knowing I am mentally retarded." (Complaint at 4 ¶3.) This allegation, without more, is insufficient to state a claim for retaliation.

### F. State Law Claims

Plaintiff alleges that prison officials violated state law in their application of rules and policies of the CDCR. A violation of state law is not sufficient to state a claim for relief under § 1983. Section 1983 does not provide a cause of action for violations of state law. See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007). To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002). Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.

In this instance, the Court has found cognizable § 1983 claims in the Complaint against defendant IGI. Therefore, at this juncture, the Court shall exercise supplemental jurisdiction over Plaintiff's state law claims that form part of the same case or controversy as Plaintiff's cognizable federal claims.[1]

### G. Doe Defendants

Plaintiff names Doe defendants in this action. Unidentified, or "John Doe" defendants must be named or otherwise identified before service can go forward. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe. For service to be successful, the Marshal must be able to identify and locate defendants.

---

[1] At this stage of the proceedings, the Court makes no determination about the viability of Plaintiff's state law claims.

## V.	CONCLUSION AND ORDER

The Court finds that Plaintiff's Complaint states cognizable claims against Defendant IGI for adverse conditions of confinement under the Eighth Amendment and violation of due process under the Fourteenth Amendment.  However, Plaintiff fails to state any other claims upon which relief may be granted.

Plaintiff shall be required to either file an amended complaint, notify the Court of his willingness to proceed only on the claims against Defendant IGI as found cognizable by the Court, or notify the Court that he stands on the Complaint as filed, subject to dismissal of claims consistent with this order.

Should Plaintiff choose to amend the complaint, the Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555).  There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct.  Iqbal, 556 U.S. at 677.  Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones, 297 F.3d at 934 (emphasis added).  Plaintiff should state clearly, in his own words, what happened and how each defendant's actions violated the particular right described by Plaintiff.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding allegations of events occurring or claims arising after the original Complaint.  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  In addition, Plaintiff should take care to include only those claims that were administratively exhausted before he filed the initial Complaint on May 2, 2016.

If Plaintiff decides to file an amended complaint, he is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superceded pleading.  Local Rule 220.  Once an amended complaint is filed, the prior

complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

     Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
   (1) File an amended complaint curing the deficiencies identified in this order,
   or
   (2) Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the cognizable due process and conditions of confinement claims against defendant IGI discussed above;
3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:16-cv-00613-EPG-PC; and
4. If Plaintiff fails to comply with this order, this action may be dismissed for failure to comply with a Court order.

IT IS SO ORDERED.

Dated:  **May 16, 2016**                    /s/ Erica P. Grosjean
                                                         UNITED STATES MAGISTRATE JUDGE